UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| ALLEN CARNEY, | ) | |
| | ) | Case Nos. 4:19-cv-25; 4:16-cr-9 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner Allen Carney's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1 in Case No. 4:19-cv-25; Doc. 63 in Case No. 4:16-cr-9.) For the following reasons, the Court concludes an evidentiary hearing is necessary to resolve Petitioner's motion.

### I. BACKGROUND

On December 6, 2016, a grand jury returned a three-count indictment charging Petitioner with: (1) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) possessing with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 18 in Case No. 4:16-cr-9.)

At trial, Timothy Miller, an agent with the 17th Judicial Drug Task Force, testified that, on March 8, 2016, he and other officers were attempting to execute warrants for Petitioner's arrest. (*See* Doc. 56, at 10–11 in Case No. 4:16-cr-9.) Miller testified that he gathered

information indicating that Petitioner was at Lakisa Adams's house in Shelbyville, Tennessee. (*Id*.) Miller then testified that when he knocked on Adams's door, other officers observed Adams and Petitioner in the kitchen area of the home, and that Adams was helping Petitioner conceal himself in a "laundry room or cabinet." (*Id*. at 16.) When Adams eventually came to the front door, Miller identified himself and told her that he was there to speak with Petitioner. (*Id*. at 17.) Miller also testified that when Adams came to the door, he "could smell the overwhelming smell of high grade marijuana." (*Id*. at 54–55.) Adams eventually went back into the home and convinced Petitioner to come out peacefully, which he did. (*Id*.) Miller then placed Petitioner under arrest. (*Id*.) Miller testified that, after arresting Petitioner, he continued talking to Adams and asked for consent to search the residence for any contraband. (*Id*.) Miller then testified:

> After I advised her what her homeowner rights were and that she did not have to consent to said search without a warrant. And that if I did go get a warrant, it would be the application of a warrant, which means I don't declare what probable cause is, only a judge declares what probable cause is. And she understood what her rights were and she told me that we had her blessing to search the home.

(*Id*. at 18–19.) Miller further testified that Adams was never resistant or reluctant to give consent and that, after he advised her of her rights, "she was very cooperative." (*Id.* at 43.) Shane George, another officer with the 17th Judicial Drug Task Force, testified that, although Adams "wasn't entirely happy with our presence, . . . she knew why we were there . . . [and] her demeanor even under those circumstances was very cooperative and understanding of the situation. . . . She was very accommodating." (*Id*. at 71.) During the search, the officers found, among other things, marijuana, cocaine base, digital scales, and a firearm. (*Id*. at 19–20.) According to Miller, Petitioner admitted that these items were his during a post-arrest interview. (*Id*. at 37.)

On February 28, 2017, a jury found Petitioner guilty on all three counts. (Doc. 35 in Case No. 4:16-cr-9.) At sentencing, United States District Court Judge Harry S. Mattice, Jr., sentenced Petitioner to a total of 240 months' imprisonment. (Doc. 50 in Case No. 4:16-cr-9.) On April 3, 2018, the United States Court of Appeals for the Sixth Circuit affirmed Petitioner's conviction and sentence. (Doc. 58 in Case No. 4:16-cr-9.)

On March 12, 2019, Petitioner timely filed his § 2255 motion. (Doc. 1 in Case No. 4:19-cv-25.) In his motion, Petitioner argues that his conviction was based on use of evidence procured through an unconstitutional search and seizure of Adams's residence and that his counsel rendered ineffective assistance by failing to conduct an adequate investigation and failing to move to suppress the evidence obtained during the search of the residence. (*Id*. at 3, 5.) Included in his motion is a handwritten document purportedly written by Lakisa Adams, stating:

> I, Lakisa Adams of sound body and mind on March 8th 2016, did not give Tim Miller of the 17th District Judicial Task Force permission to search my residence on 411 Dover St. of Shelbyville, Tn. I acknowledged their presence by answering the door and stepped outside to converse with Officer Tim Miller. Officer Miller stated he had an arrest warrant for Allen Carney. I responded by telling the Officer Tim Miller to hold on that I had two small children in the house and that I, Lakisa Adams was not aware of Allen Carney having a warrant, and that I would have Mr. Carney Step outside. I then turned to enter the house and he attempted to proceed behind me before I could shut the door behind me (to prevent the kids from seeing the officer and becoming alarmed)[.] Officer Miller stuck his foot in the door before I could tell Mr. Carney to step outside Officer Miller burst into my home and proceeded to make an arrest in front of my children while I yelled and screamed that I did not give my permission for him to enter my home and for him to take Mr. Carney and Get Out! Officers that were with Miller escorted Carney out while Miller remained in my home. Moments later a Hispanic [Officer] dressed in street clothes appears and says that Allen Carney said there was drugs in the home. The Officers [then] began to tear my house apart. All of this was done without my consent or . . .

(Doc. 1, at 4 in Case No. 4:19-cv-25.) The handwritten document does not appear to be dated, signed, or sworn to under the penalty of perjury. (*See id*.) A closer review of the handwritten document, however, suggests that it may not have been docketed in its entirety. First, the writing

3

on the first page cuts off midsentence. (*Id.*) Second, although faint, the middle of the page shows a backwards notary's seal. (*Id.*) This suggests that the second page of the handwritten document, presumably written on the back side of the first page, was not docketed and that the representations made within the document may have actually been sworn to under penalty of perjury.[1] (*See id.*) Petitioner's § 2255 motion is now ripe for the Court's review.

## II. STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

In ruling on a § 2255 petition, the Court must also determine whether an evidentiary hearing is necessary. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). "The burden for establishing entitlement to an evidentiary hearing is relatively light, and where there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Martin*, 889 F.3d at 832 (quoting *Turner v.*

---

[1] The Court has confirmed that the Clerk's office no longer possesses the original document sent by Petitioner for filing.

*United States*, 183 F.3d 474, 477 (6th Cir. 1999)) (internal quotation marks omitted). While a petitioner's "mere assertion of innocence" does not entitle him to an evidentiary hearing, the district court cannot forego an evidentiary hearing unless "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id*. When a petitioner's factual narrative of the events is not contradicted by the record and not inherently incredible and the government offers nothing more than contrary representations, he is entitled to an evidentiary hearing. *Id*.

### III. ANALYSIS

#### A. Fourth Amendment Challenge

To the extent Petitioner argues that he is entitled to relief under § 2255 because law enforcement's search of Adams's residence violated the Fourth Amendment's prohibition on unlawful searches and seizures, that argument fails because that claim is procedurally defaulted. As the Sixth Circuit has explained, "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under . . . § 2255"; rather, such claims must be raised before trial or on direct appeal. *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013).

#### B. Ineffective Assistance of Counsel

"[T]hough free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Id*. (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986)).

To collaterally attack a conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the

profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  Therefore, the Court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Failure to file a suppression motion may amount to ineffective assistance, but it is not ineffective assistance per se. *Kimmelman*, 477 U.S. at 375.  To demonstrate ineffective assistance of counsel based on failure to file a motion to suppress, a petitioner must show that counsel's failure fell below an objective standard of reasonableness. *Id*.  Additionally, the petitioner must demonstrate that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the outcome would have been different absent the excludable evidence. *Williams v. United States*, 632 F. App'x 816, 821 (6th Cir. 2015) (citing *Kimmelman*, 477 U.S. at 375).

In this case, an evidentiary hearing is necessary to resolve Petitioner's § 2255 motion.  At trial, Miller testified that Adams consented to search of her residence.  Assuming, however, that

Adams authored the handwritten document attached to Petitioner's motion and that she would testify under oath consistent with those representations,[2] she claims she never consented to the search. Had counsel filed a motion to suppress and had Miller and Adams been called to testify, the Court would have made credibility determinations as to Miller and Adams's conflicting testimony. Although the Government is correct that "it is not clear that the Court would have found Adams more credible than the officers" (Doc. 10, at 5–6 in Case No. 4:19-cv-25), the converse is also true—it is not clear that the Court would have found the officers more credible. If the Court believed Adams's testimony that she never consented to search of the residence, Petitioner possesses a plausible argument that the search of Adams's residence violated the Fourth Amendment and that evidence obtained during the search should have been suppressed.[3] As a result, to determine whether counsel's conduct fell below an objective standard of reasonableness in failing to file a motion to suppress, the Court needs to understand what investigation counsel undertook and what information he knew before deciding not to file a motion to suppress. If counsel interviewed Adams and determined that she was not a credible witness, then his conduct likely did not fall below an objective standard of reasonableness. Conversely, if counsel failed to interview Adams and she provides credible testimony under oath regarding her lack of consent, then Petitioner may be able to satisfy his burden under *Strickland*.

---

[2] Proceeding with an evidentiary hearing is appropriate, especially because it appears that the second page of the handwritten document was not docketed and because the second page likely includes a notary's seal, which suggests that the author made the statements therein under the penalty of perjury. Assuming Adams testifies under oath at an evidentiary hearing consistent with the representations made in the handwritten document, Petitioner may have a plausible argument that he is entitled to relief under § 2255. Failure to present such testimony from Adams at an evidentiary hearing, however, will almost certainly foreclose any possibility of relief for Petitioner under § 2255.

[3] Other than arguing that the inevitable-discovery doctrine potentially applies, the Government does not argue that any of the other exceptions to the Fourth Amendment warrant requirement apply under these circumstances.

This information, however, is not in the record, and, as a result, the record does not conclusively show that Petitioner is entitled to no relief.[4] Accordingly, Petitioner has met his relatively light burden for establishing entitlement to an evidentiary hearing.

IV. **CONCLUSION**

For the reasons stated herein, the Court will conduct an evidentiary hearing on Petitioner's § 2255 motion on **May 18, 2021,** at **10:00 a.m.** The Court **APPOINTS** Hilary Hodgkins to represent Petitioner at the hearing. The Court hereby **ORDERS** that the United States Marshal, or his authorized deputy, transport Petitioner from his place of incarceration to Chattanooga, Tennessee, allowing sufficient time for Petitioner to be available to meet with his attorney before the hearing.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[4] For similar reasons, the inevitable-discovery doctrine does not foreclose the possibility of relief under § 2255. "The inevitable discovery doctrine, an exception to the exclusionary rule, allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). Here, the handwritten document purportedly authored by Adams puts Miller's and Adams's credibility at issue. Assuming consistent testimony at an evidentiary hearing, credibility determinations must be made to determine whether counsel rendered ineffective assistance. If the Court finds Miller credible, then his testimony regarding the odor of marijuana likely provides an independent basis for searching Adams's residence such that Petitioner could not demonstrate prejudice. But, if the Court finds Adams more credible than Miller, it may conclude that Miller's testimony regarding the odor of marijuana he smelled outside Adams's residence is not credible. Without making such credibility determinations and without understanding the scope of counsel's investigation and his decision-making process regarding whether to file a motion to suppress, the Court cannot resolve Petitioner's § 2255 motion.