# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| ALLEN CARNEY, | ) |
| *Petitioner*, | ) Case Nos. 4:19-cv-25; 4:16-cr-9 |
| | ) |
| v. | ) Judge Travis R. McDonough |
| | ) |
| UNITED STATES OF AMERICA, | ) Magistrate Judge Susan K. Lee |
| | ) |
| *Respondent*. | ) |

## MEMORANDUM OPINION

Before the Court is Petitioner Allen Carney's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1 in Case No. 4:19-cv-25; Doc. 63 in Case No. 4:16-cr-9.) Also before the Court is Petitioner's unopposed motion to file an untimely memorandum of law in support of his motion (Doc. 12 in Case No. 4:19-cv-25). For good cause shown, the motion to file an untimely memorandum of law is **GRANTED**, and Petitioner's proposed memorandum of law (Doc. 13 in Case No. 4:19-cv-25) is **DEEMED FILED**. Petitioner's motion to appoint counsel (Doc. 61 in Case No. 4:16-cr-9) also remains pending before the Court, but it is **DENIED AS MOOT** given the appointment of Hilary Hodgkins to represent Petitioner in this matter. (Doc. 14, at 8, in Case No. 4:19-cv-25.) For the following reasons, the Court will **DENY** Petitioner's § 2255 motion.

I.     **BACKGROUND**

On December 6, 2016, a grand jury returned a three-count indictment charging Petitioner with: (1) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) possessing with the intent to distribute a mixture and substance containing a detectable

amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 18 in Case No. 4:16-cr-9.)

At trial, Timothy Miller, an agent with the 17th Judicial Drug Task Force, testified that, on March 8, 2016, he and other officers were attempting to execute warrants for Petitioner's arrest. (*See* Doc. 56, at 10–11 in Case No. 4:16-cr-9.) Miller testified that he gathered information indicating that Petitioner was at Lakisa Adams's house in Shelbyville, Tennessee. (*Id*.) Miller then testified that when he knocked on Adams's door, other officers observed Adams and Petitioner in the kitchen area of the home, and that Adams was helping Petitioner conceal himself in a "laundry room or cabinet." (*Id*. at 16.) When Adams eventually came to the front door, Miller identified himself and told her that he was there to speak with Petitioner. (*Id*. at 17.) Miller also testified that when Adams came to the door, he "could smell the overwhelming smell of high-grade marijuana." (*Id*. at 54–55.) Adams eventually went back into the home and convinced Petitioner to come out peacefully, which he did. (*Id*.) Miller then placed Petitioner under arrest. (*Id*.) Miller testified that, after arresting Petitioner, he continued talking to Adams and asked for consent to search the residence for any contraband. (*Id*.) Miller then testified:

> After I advised her what her homeowner rights were and that she did not have to consent to said search without a warrant. And that if I did go get a warrant, it would be the application of a warrant, which means I don't declare what probable cause is, only a judge declares what probable cause is. And she understood what her rights were and she told me that we had her blessing to search the home.

(*Id*. at 18–19.) Miller further testified that Adams was never resistant or reluctant to give consent and that, after he advised her of her rights, "she was very cooperative." (*Id.* at 43.) Shane George, another officer with the 17th Judicial Drug Task Force, testified that, although Adams "wasn't entirely happy with our presence, . . . she knew why we were there . . . [and] her

2

demeanor even under those circumstances was very cooperative and understanding of the situation. . . . She was very accommodating." (*Id*. at 71.) During the search, the officers found, among other things, a man's clothing and personal items, marijuana, cocaine base, digital scales, and a firearm. (*Id*. at 19–20.) According to Miller, Petitioner admitted that these items were his during a post-arrest interview. (*Id*. at 37.)

On February 28, 2017, a jury found Petitioner guilty on all three counts. (Doc. 35 in Case No. 4:16-cr-9.) At sentencing, United States District Court Judge Harry S. Mattice, Jr., sentenced Petitioner to a total of 240 months' imprisonment. (Doc. 50 in Case No. 4:16-cr-9.) On April 3, 2018, the United States Court of Appeals for the Sixth Circuit affirmed Petitioner's conviction and sentence. (Doc. 58 in Case No. 4:16-cr-9.)

On March 12, 2019, Petitioner timely filed his § 2255 motion. (Doc. 1 in Case No. 4:19-cv-25.) In his motion, Petitioner argues that his conviction was based on the use of evidence procured through an unconstitutional search and seizure of Adams's residence and that his counsel rendered ineffective assistance by failing to conduct an adequate investigation and failing to move to suppress the evidence obtained during the search of the residence. (*Id*. at 3, 5.) Included in his motion was a handwritten document purportedly written by Adams, stating that she did not, at any point, consent to the search of her house, among other details. (Doc. 1, at 4 in Case No. 4:19-cv-25.)

On March 12, 2021, the Court entered an order finding Petitioner's § 2255 motion failed on the basis of a Fourth Amendment violation because it was procedurally defaulted, but that an evidentiary hearing was necessary to resolve Petitioner's § 2255 motion on the basis of ineffective assistance of counsel. (Doc. 14 in Case No. 4:19-cv-25.) On September 16, 2021,

the Court held an evidentiary hearing and heard testimony from Petitioner, Miller, Adams, and Brandon Raulston, his attorney in the underlying criminal case.

During the hearing, Raulston testified regarding his investigation of the facts in Petitioner's case. Raulston testified that he had contacted and interviewed Adams; Adams testified that she remembered speaking to Raulston about the case but could not recall details of their conversations. Raulston testified that Adams told him that she did not consent for the officers to enter her home when she initially came to the door. Instead, Adams told him she conceded to the officer that he was there, and she was going inside to get him and bring him to the officers. But during that exchange, the officers entered and apprehended him anyway. Adams testified to the same at the evidentiary hearing. Raulston got the impression from his conversations with Adams that she did consent for them to enter, but he confronted her with discovery evidence that said she consented. Raulston testified that Adams admitted to allowing the officers to search because she was concerned about being arrested for possessing marijuana, which she admitted to smoking. Nonetheless, Raulston testified Adams told him she never explicitly said "yes, I allow you to search the residence," or any other definitive statement of consent, and Adams testified to the same.

Raulston also testified about his trial strategy and decision to not file a motion to suppress. He testified that the police believed the personal items found at Adams's house belonged to Petitioner. But Adams told him that Petitioner did not live at her house, did not stay there, and had only been there for two or three hours to visit his child. Adams and Petitioner testified at the hearing that, although he did not live there or pay rent, he occasionally spent the night and came over often. Raulston discussed filing a motion to suppress with his client, but Petitioner also told Raulston that none of the items recovered were his, including the personal

4

items. Petitioner testified to the same at the hearing—that the items were not his and that he only admitted ownership of them because the officers had threatened to arrest Adams and take her children into protective custody. Adams testified at the hearing that she did not know to whom the personal items and contraband belonged, but it did not belong to her and she doubted it belonged to Petitioner. Raulston explained that he decided not to file a motion to suppress because he had evidence from Petitioner and Adams that Petitioner did not have standing, or a reasonable expectation of privacy, in Adams's home. Raulston believed that arguing Petitioner *did* have a reasonable expectation of privacy would violate his duty of candor to the Court. Further, Raulston believed filing such a motion to also be a strategically poor decision. To prove that Petitioner had a reasonable expectation of privacy in Adams's home, he would have had to put on evidence that Petitioner had stayed in the home. This kind of evidence would undermine Raulston's most viable trial defense, that is, that none of the items recovered in the home were his and that Adams may have been involved with another man to whom the personal items and contraband belonged.

## II. STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

In his § 2255 motion, Petitioner asserts that he received ineffective assistance of counsel because Raulston failed to conduct an adequate investigation and failed to seek suppression of the evidence obtained during the search of Adams's residence. (*See* Doc. 1, at 3, 5 in Case No. 4:19-cv-25.) To collaterally attack his conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Therefore, the Court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Failure to file a suppression motion may amount to ineffective assistance, but it is not ineffective assistance *per se*. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). To demonstrate ineffective assistance of counsel based on failure to file a motion to suppress, a petitioner must show that counsel's failure fell below an objective standard of reasonableness. *Id*. The petitioner must also

demonstrate that his motion to suppress is meritorious and that there is a reasonable probability that the outcome would have been different absent the excludable evidence. *Williams v. United States*, 632 F. App'x 816, 821 (6th Cir. 2015) (citing *Kimmelman*, 477 U.S. at 375).

To have standing to challenge the search of another person's home, a defendant must show that he had "an actual (subjective) expectation of privacy" in the home and that this expectation was "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland*, 442 U.S. 735, 735 (1979) (citing *Katz v. United States*, 389 U.S. 347 (1967)); *United States v. Lanier*, 636 F.3d 228, 231 (6th Cir. 2011). [A] social guest [can] have a reasonable expectation of privacy in his host's residence where the guest was able to show a meaningful connection to his host's residence. *United States v. Haynes*, 108 F. App'x 372, 375 (6th Cir. 2004) (citing *United States v. Pollard*, 215 F.3d 643, 647–48 (6th Cir. 2000)). In *Pollard*, the Sixth Circuit held the defendant had a meaningful connection to and thus a reasonable expectation of privacy in his host's home because he had been friends with the host for seven years, occasionally spent the night at the residence, kept some of his personal belongings there, and was permitted to be in the home while the host was gone. *Pollard*, 215 F.3d at 647–48. Similarly, in *United States v. Heath*, 259 F.3d 522 (6th Cir. 2001), the Sixth Circuit held the defendant had a meaningful connect where his host was his cousin, he slept on the couch as often as once a week for two years, he possessed a key to the residence, and he was able to exclude others from the residence. 259 F.3d at 533.

In this case, after considering the testimony provided during the evidentiary hearing, the Court finds that counsel's decision not to file a motion to suppress did not fall below an objective standard of reasonableness. Adams and Petitioner told Raulston unequivocally that Petitioner did not live at Adams's home and had only been visiting for a couple hours to see his daughter.

7

Thus, in order to show he had standing for filing the motion to suppress as only a social guest, Petitioner would have to prove he had a meaningful connection to Adams's home, such as staying there often, keeping his belongings there, having a key, remaining at the residence even when Adams was not home, or excluding others from her home. *See Haynes*, 108 F. App'x 372, 375; *Pollard*, 215 F.3d at 647–48; *Heath*, 259 F.3d at 533. Certainly, the fact that Petitioner's daughter lived there was some evidence of a connection. But Raulston testified he did not know whether Petitioner stayed there often, kept his things there, or otherwise exercised any control over the property.

Even assuming he could have obtained such evidence with further investigation, Raulston testified that he strategically did not pursue the motion to suppress, because he believed the more evidence he produced of a meaningful connection Petitioner had to the home, the less credible Petitioner's defense would be that the personal items and contraband did not belong to him. Even if Petitioner could have established standing under the social-guest doctrine, this kind of strategic decision does not fall below the objective standard of reasonableness. If Raulston moved to suppress the evidence but the motion was unsuccessful, prosecution could have used any evidence that Petitioner stayed at Adams's home often, left his items there, or was left in the home unattended to impeach the defense that the contraband did not belong to him, ultimately harming Petitioner's case. With the information available to Raulston at the time, this decision was reasonable. *See Strickland*, 466 U.S. at 689. Accordingly, Petitioner has failed to demonstrate that he received ineffective assistance of counsel at trial.

## IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 motion (Doc. 1 in Case No. 4:19-cv-25; Doc. 63 in Case No. 4:16-cr-9) is **DENIED**. Should Petitioner give timely notice of an appeal

8

Case 4:19-cv-00025-TRM-SKL    Document 25    Filed 03/09/22    Page 8 of 9    PageID #: 239

from this order, such notice will be treated as an application for a certificate of appealability, which is **DENIED** because he has failed to make a substantial showing of the denial of a constitutional right or to present a question of some substance about which reasonable jurists could differ. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**